UMBERG ZIPSER LLP
Carole E. Reagan (SBN 162674)
creagan@uzllp.com
Mei Tsang (SBN 237959)
mtsang@uzllp.com
1920 Main Street, Suite 750
Irvine, California 92614
Telephone: (949) 679-0052
Facsimile: (949) 679-0461

Attorneys for Plaintiff
SOC IP LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SOC IP LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SARAH TOWN, individually; and DOES 1-10,<br><br>Defendants. | CASE NO. ____________<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SOC IP LLC ("SOC" or "Plaintiff"), by and through its attorneys of record, complains against Sarah Town ("Town") and DOES 1 through 10 (DOES") (collectively, "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff SOC is a limited liability company organized under the laws of the State of California, with its principal place of business in Fresno, California.

2. Upon information and belief, Defendant Town is an individual residing in Ventura, California.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this civil action arises under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims for breach of contract and unfair competition pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of facts.

5. This Court has personal jurisdiction over Defendant because Defendant accessed and used Plaintiff's online platform and services, entered into a contract with Plaintiff for use of those services, and committed the acts alleged herein that caused harm to Plaintiff, in California.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District, and substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## COMMON FACTUAL ALLEGATIONS

7. Plaintiff is the publisher and owner of all right, title, and interest in and to the copyrightable work titled "Sullivan on Comp," a comprehensive, multi-volume legal treatise and practice tool covering California worker's compensation law (the "Work" or "Sullivan on Comp").

8. The Copyright Office issued Registration No. TXu 2-545-109 with an effective date of May 29, 2026, for the Work. A true and correct copy of the Copyright Registration is attached hereto as Exhibit A.

9. Published since 2011, originally in hard copy and now entirely online, Sullivan on Comp includes: (1) a 16-volume legal treatise (the "Treatise"); (2) ChatSOC, an AI-powered chatbot informed by the SOC treatise; (3) multiple workers' compensation calculators that simplify the process of determining workers' compensation benefits; (4) a searchable database of California workers' compensation decisions, (5) a library of original Continuing Legal Education ("CLE") video webinar courses with instructional content, presentation materials, and expert analysis; and (6) monthly Case Law Updates that alert subscribers to important developments in the law.

10. Sullivan on Comp is published and made available exclusively to subscribers through Plaintiff's proprietary online platform at https://www.sullivanoncomp.com/. Sullivan on Comp currently has over 10,000 paid subscribers and has become the industry standard among workers compensation attorneys, claims adjusters, and other professionals. Sullivan on Comp has substantial commercial value to SOC.

11. Sullivan on Comp consists of original written and video content, analysis, commentary, and research. Sullivan on Comp constitutes an original work of authorship fixed in tangible media and is protected by federal copyright law and registered with the United States Copyright Office. SOC owns the exclusive rights to publish, reproduce, distribute, and otherwise exploit Sullivan on Comp content, as well as to license others to do so in exchange for the payment of license fees or royalties.

12. In addition to its paid subscription service, SOC offers prospective subscribers a two-week free trial period to evaluate Sullivan on Comp before committing to a paid subscription. Access to Sullivan on Comp, including during the

free trial period, is subject to SOC's Terms of Service. All users, including trial subscribers, must agree to SOC's Terms of Service before accessing the platform.

13. The Terms of Service make clear that all Sullivan on Comp content remains the exclusive property of SOC, and expressly prohibit users from, among other things:

- Copying any content;
- Using any content for any commercial purposes;
- Accessing content manually or with extraction software, automated process and/or other device to scrape, copy or monitor any portion of Sullivan on Comp;
- Distributing, printing, emailing, re-publishing, giving, selling, reproducing, or otherwise causing to be disbursed in any manner whatsoever (whether for free or for profit) in whole or in part, any content or services, without express, written permission of SOC, and
- Using any content to develop, train, or improve any artificial intelligence or similar models or competing databases. (SOC's Terms of Service published January 17, 2026, are attached hereto as Exhibit B.)

14. On or about January 22, 2026, Defendant signed up for a 14-day free trial to access Sullivan on Comp. Upon Defendant's first log-in on January 24, 2026, Defendant clicked through and agreed to the Terms of Service. During the 14-day trial period, Defendant was granted temporary online access to all content and services of Sullivan on Comp, subject to the Terms of Service.

15. SOC can monitor and track user activity on its platform. During Defendant's trial period, SOC's usage logs showed extraordinary, alarming activity inconsistent with any legitimate, lawful, or permissible use. Defendant's usage was instead consistent with systematic copying, scraping, or downloading of Plaintiff's copyrighted materials. Specifically:

- Defendant accessed 4,899 tracked page views of Sullivan on Comp, nearly the entirety of all Treatise, Case Law Update, and Webinar content. For comparison, the average user accesses 21 page views during a two-week trial. During the period from April 1, 2025, through March 31, 2026, excluding Defendant, the *highest* activity by any other trial user was 293 page views.
- In particular, Defendant accessed 99.5% of the entire 16-volume Sullivan on Comp Treatise.
- Defendant accessed every monthly Case Law Update published from February 2022 through February 2026.
- Defendant's page views also occurred at extremely rapid speed. Of the 4,850 page views for which an interval from the preceding view could be tracked, 2,165 (44.6%) occurred within one second of the preceding view, and 3,347 (69.0%) occurred within five seconds.
- Over 40 percent of Defendant's total activity occurred in a six-hour time period on one day, February 6.
- Usage logs also show a pattern of Defendant initiating multiple simultaneous or near-simultaneous sessions of use. For example, on February 6, 2026, Defendant started eight separate sessions within 30 seconds, between 5:10:27 PM and 5:10:57 PM.

16. On information and belief, it is not humanly possible to read, comprehend, or even skim this volume of dense legal content at this speed, much less would any ordinary use involve such systematic patterns and intervals. And even if it were humanly possible, there is no legitimate reason to do so associated with a trial use of a legal treatise and associated research tools. On information and belief, the speed, sequence, patterns, and volume of Defendant's use are consistent with and strongly suggestive of systematic retrieval and copying or scraping of content.

17. Defendant's use of the Sullivan on Comp CLE video courses is even more blatantly wrongful. The CLE webinars run 30 to 60 minutes in length. Of the

112 published webinars, the usage data show Defendant ran 107 to completion (95.5%), collecting 107 CLE completion certificates. Setting aside that there is no legitimate reason to collect 107 CLE certificates, totaling over 75 hours of CLE, when the California State Bar requires only 25 hours of CLE every three years (or 46 hours for Certified Legal Specialists), it is not humanly possible to actually watch that volume of content during the period of time that Defendant accessed it.

18. On one day, February 6, 2026, for example, Defendant completed and collected CLE certificates for 89 courses totaling approximately 58.75 hours. All of these courses were completed within four hours and 25 minutes. Of the 89 courses, Defendant both started and completed at least 61 within that time period (the other 28 webinar videos had been loaded on a prior day and were completed on February 6; it is not yet known what portions of those 28 videos, if any, Defendant "watched" on the prior days). Even taking just these 61 CLE webinars, which totaled approximately 37.2 hours, and assuming they were all run at the maximum 2x speed, Defendant could not watch it all in 4 hours and 25 minutes. Moreover, records show Defendant completing multiple videos within seconds of each other.

19. As a more precise example, in one 28-minute time period on February 6, Defendant opened and ran to certified completion 19 CLE videos. Those 19 videos totaled 9.5 hours of CLE credit. Even at 2x speed, those 19 videos would have required 4 hours and 45 minutes to watch.

20. On information and belief, Defendant did not watch the videos—she could not possibly have; rather, she ran them on multiple simultaneous browsers or used other means to play, download, copy, and/or scrape the video files.

21. The foregoing activity by Defendant is not consistent with any legitimate, non-infringing, contractually-permissible use of Sullivan on Comp. Upon information and belief, Defendant copied, scraped, downloaded, or otherwise reproduced substantially all of Sullivan on Comp in violation of the Terms of Service and in infringement of SOC's copyrights.

22. Upon information and belief, Defendant now possesses unauthorized copies of Plaintiff's copyrighted works and/or distributed it to others.

23. Upon information and belief, Defendant intends to use, and may already be using, Plaintiff's copyrighted materials for commercial or other unauthorized purposes without permission and without compensating SOC.

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement, 17 U.S.C. § 501)**

**(Against All Defendants)**

24. Plaintiff realleges and incorporates by reference paragraphs 1 through 23 above.

25. Plaintiff is the owner of all rights, title, and interest in the copyrights to the Work. Plaintiff's copyrights have been registered with the United States Copyright Office. The Work consists of original works of authorship by Plaintiff fixed in tangible media and is entitled to protection under the Copyright Act, 17 U.S.C. § 101 et seq., and all laws of the United States governing copyrights.

26. Defendant had access to, and did access, the Work through her trial subscription to Plaintiff's Sullivan on Comp online platform. Upon information and belief and as detailed above, Defendant infringed Plaintiff's exclusive copyrights by copying, downloading, scraping, or otherwise reproducing all or substantially all of the copyrighted Sullivan on Comp content, in violation of 17 U.S.C. § 501.

27. Upon information and belief, Defendant's infringement was willful. Defendant knowingly agreed to Terms of Service that expressly prohibited copying, extracting, and scraping, and then, upon information and belief, deliberately engaged in conduct to copy, extract, scrape, or otherwise reproduce and use or distribute Plaintiff's Sullivan on Comp content for Defendant's own commercial purposes.

28. As a direct and proximate result of Defendant's copyright infringement, Plaintiff alleges on information and belief that it has suffered and/or will suffer

damages, including lost subscription revenue, loss of the value of its copyrighted works, and damage to its business reputation and market position.

29. Upon information and belief, Defendant's infringement is continuing and will continue to cause irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy at law, unless enjoined by this Court. Plaintiff is entitled to an injunction under 17 U.S.C. § 502, prohibiting the continued infringement of copyrighted works, and an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing works.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against Defendant)**

30. Plaintiff realleges and incorporates by reference paragraphs 1 through 23 above.

31. Plaintiff and Defendant entered into a valid and enforceable contract consisting of Plaintiff's Terms of Service, which Defendant agreed to as a condition of accessing Plaintiff's Sullivan on Comp online platform and content during a two-week trial period.

32. The Terms of Service prohibited Defendant from copying, downloading, or otherwise reproducing Sullivan on Comp content, using any content for commercial purposes, and scraping or harvesting data through any manual or automated means.

33. Plaintiff performed all obligations required under the Terms of Service, providing Defendant with full access to Sullivan on Comp during the trial period.

34. Upon information and belief as detailed above, Defendant materially breached the Terms of Service by copying, scraping, downloading, or otherwise reproducing and/or distributing Sullivan on Comp content in violation of the express prohibitions in the contract.

35. As a direct and proximate result of Defendant's breach of contract, Plaintiff alleges on information and belief that it has suffered damages including the

loss of subscription revenue, the diminished value of Plaintiff's proprietary and copyrighted content, and harm to Plaintiff's business model and competitive position.

36. Defendant's ongoing possession and use of the copied materials and/or harvested data constitutes a continuing violation that will result in further irreparable harm to Plaintiff unless enjoined by this Court.

**THIRD CLAIM FOR RELIEF**

**(Unfair Competition under California Business and Professions Code § 17200)**

**(Against All Defendants)**

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 23.

38. California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice.

39. Defendant's conduct constitutes an unlawful business practice because it violates federal copyright law.

40. On information and belief, as a direct and proximate result of Defendant's unfair competition, Plaintiff has suffered and continues to suffer injury to its business and property, including lost revenue, diminution in the value of its copyrighted works, and competitive harm.

41. On information and belief, Defendant's ongoing possession and use of the copied materials constitutes a continuing violation that will result in further irreparable harm to Plaintiff unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants as follows:

1. Finding that Defendants have infringed Plaintiff's copyrights in violation of 17 U.S.C. § 501;

2. Finding that Defendant has breached the Terms of Service contract with Plaintiff;

3. Finding that Defendants have engaged in unfair competition in violation of California Business and Professions Code § 17200;

4. Awarding Plaintiff compensatory damages and disgorgement of all profits derived by Defendant from acts of copyright infringement;

5. Alternatively, awarding Plaintiff statutory damages for copyright infringement pursuant to 17 U.S.C. § 504 in an amount up to $150,000 per work infringed;

6. Issuing a preliminary and permanent injunction pursuant to 17 U.S.C. § 502:

- Enjoining Defendant from using, reproducing, distributing, or selling any of Plaintiff's copyrighted material, or any other form of dealing or transaction in any and all products and services that infringe upon Plaintiff's copyrights; and
- Ordering Defendant to destroy or return to Plaintiff all copies of Plaintiff's copyrighted materials in Defendant's possession or control;

7. Issuing an injunction under California Business and Professions Code § 17200 requiring Defendant to cease all unfair business practices and to make restitution;

8. Awarding Plaintiff its costs of suit, including reasonable attorney's fees;

9. Awarding Plaintiff pre-judgment and post-judgment interest as provided by law; and

10. Granting such other and further relief as the Court deems just and proper.

DATED: August 17, 2026 UMBERG ZIPSER LLP

*/s/ Carole E. Reagan*
Carole E. Reagan
Attorneys for Plaintiff SOC IP, LLC

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: August 17, 2026 UMBERG ZIPSER LLP

*/s/ Carole E. Reagan*
Carole E. Reagan
Attorneys for Plaintiff SOC IP, LLC